UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

RAYMOND GILBERT ROSS, JR.                                                                APPELLANT

v.                                                                         CIVIL ACTION NO. 3:07-CV-415-S

JOCELYN BERGERON                                                                            APPELLEE

### MEMORANDUM OPINION AND ORDER

This matter is before the court upon appeal from the Bankruptcy Court. The Debtor-Appellant Raymond Gilbert Ross, Jr. ("Ross") argues that the Bankruptcy Court erred when it denied him a discharge pursuant to 11 U.S.C § 727(a)(3). For the following reasons, this court will affirm the decision of the Bankruptcy Court.

### BACKGROUND

The Bankruptcy Court made the following findings of fact in its May 3, 2007 Memorandum:

1.  The Appellee, Jocelyn Bergeron ("Bergeron") obtained a judgment against Ross on February 14, 2003, in the Tenth Judicial Circuit for Hardee County, Florida, in the amount of $66,032.00.

2.  On June 19, 2003, Bergeron filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the Middle District of Florida. Bergeron failed to disclose his claims against Ross in his bankruptcy schedules.

3.  Ross filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the Western District of Kentucky on March 22, 2004. Pursuant to Fed. R. Bank. P. 4004(a), the deadline for complaints objecting to discharge was set at June 22, 2004.

4. On June 16, 2004, Bergeron moved for an extension of time to contest Ross's discharge and, on July 7, 2004, the Bankruptcy Court granted Bergeron's motion and extended the deadline to August 23, 2004.

5. On August 23, 2004, Bergeron initiated an adversary proceeding against Ross seeking to deny his discharge under 11 U.S.C. § 727(a)(2) (concealment of assets), § 727(a)(3) (failure to keep records), § 727(a)(4)(A) (false oath), and § 727(a)(5) (failure to explain loss of assets). At the time Bergeron initiated the § 727 action, he lacked standing, as the right to pursue the action belonged to the Chapter 7 Trustee in his Florida case.

6. At some point in 2005, Bergeron moved to re-open his Florida case for the limited purpose of authorizing the Chapter 7 Trustee to File a Notice of Abandonment of the claims against Ross. The Florida Bankruptcy Court granted that motion on May 26, 2005.

7. On July 20, 2005, the Florida Chapter 7 Trustee filed a Report and Notice of Abandonment, wherein he proposed to abandon all rights and title to the judgment held by Bergeron against Ross. Said abandonment would be effective within 15 days, unless an objection was filed. This Notice was sent to Bergeron's creditor matrix but not to Ross, as he was not a creditor of Bergeron. No party objected to the abandonment.

8. On September 23, 2005, Bergeron filed a Status Report in this action informing the Bankruptcy Court of the actions taken with respect to his Florida bankruptcy case.

9. Eventually, after both parties completed discovery, the Bankruptcy Court conducted a final pre-trial conference on December 5, 2006, and set the adversary proceeding for trial on March 21, 2007.

10. On March 20, 2007, the day before the trial, Ross filed a motion to dismiss the adversary proceeding based on the doctrine of judicial estoppel. Ross contended that due to Bergeron's

failure to list his claims against Ross in his Florida bankruptcy case, Bergeron should be judicially estopped from pursuing the action.

11. Immediately preceding the trial, the Bankruptcy Court denied the motion to dismiss as being untimely. The Bankruptcy Court did, however, offer the parties the opportunity to file post trial briefs on the issue of standing and jurisdiction related to the timing of the adversary proceeding and the status of the Florida bankruptcy case.

12. At the trial, Bergeron presented evidence that between December 22, 2000 and March 22, 2004, Ross acquired funds in excess of $650,000.

13. Ross testified that since 1984, he dealt in real estate and owned and operated a mobile home park, which he later sold.

14. While Ross was able to orally explain the disposition of the above-referenced funds, he testified he kept no financial records which would verify his testimony.

15. Ross could not, or would not, produce any financial records tracing his financial history in the years immediately preceding the filing of his bankruptcy case. Thus, no records were produced showing the disposition of the funds mentioned above, including the proceeds from the sale of the mobile home park.

16. The only explanation provided by Ross with respect to his failure to keep financial records was that he ran all of his enterprises on an all cash basis and that he simply preferred to not keep financial records.

17. The few bank records submitted by Ross only relate to a period of time starting in 2003 and do not adequately explain the source of his deposits or the disposition of the monies in question.

After making its findings of facts, the Bankruptcy court determined that although Bergeron lacked standing when he filed the adversary proceeding, the abandonment in the Florida bankruptcy case

served to confer standing upon him *nunc pro tunc*, thereby correcting the standing problem that existed when he initially filed the action. The Bankruptcy Court then determined that Ross failed to keep records from which his financial condition or his business transactions might be ascertained and provided no reasonable justification for his failure to keep such records. Pursuant to 11 U.S.C. § 727(a)(3), the Bankruptcy Court denied Ross's discharge. On appeal, Ross argues that the Bankruptcy Court erred in determining that Bergeron had standing to bring the adversary proceeding and erred in denying Ross's discharge.

## DISCUSSION

A federal district court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C. § 158(a). On appeal, a district court reviews the bankruptcy court's finding of fact under a clearly erroneous standard, but reviews its conclusions of law de novo. *Nicholson v. Isaacman (In re Isaacman)*, 26 F.3d 629, 631 (6th Cir.1994). In reviewing a bankruptcy court's order denying discharge, the reviewing court will not overturn the bankruptcy court's decision unless it is clearly erroneous. *Westerfield v. World Inv. Corp*, No. 6:06CV20-DCR, 2006 WL 1206386, at *2 (E.D.Ky. May 2, 2006) (citing *In re D'Agnese*, 86 F.3d 732, 734 (7th Cir.1996)).

I.

Ross first challenges the Bankruptcy Court's determination that the Florida trustee's abandonment of Bergeron's claims operated to validate Bergeron's standing at the time he filed the adversary proceeding. Ross argues that Bergeron never had standing to pursue the adversary proceeding and therefore the Bankruptcy Court lacked jurisdiction over the action.

Section 554(a) of the Bankruptcy Code allows the trustee to "abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. 554(a). Property abandoned under § 554 ceases to be property of the estate and "reverts to the debtor

and stands as if no bankruptcy petition was filed." *Dewsnup v. Timm (In re Dewsnup)*, 908 F.2d 588, 590 (10th Cir. 1990)*., aff'd*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (citations omitted). "When the court grants a trustee's petition to abandon property in a bankrupt's estate, any title that was vested in the trustee is extinguished, and the title reverts to the bankrupt, *nunc pro tunc*." *Mason v. Commissioner of Internal Revenue*, 646 F.2d 1309, 1310 (8th Cir. 1980); *see also Morlan v. Universal Guar. Life Ins. Co.,* 298 F.3d 609, 617 (7th Cir. 2002) ("when property of the bankrupt is abandoned, the title 'reverts to the bankrupt, *nunc pro tunc*, so that he is treated as having owned it continuously.'") (quoting *Wallace v. Lawrence Warehouse Co.*, 339 F.2d 392, 394 n.1 (9th Cir. 1964)).

Ross acknowledges that the above cited cases hold that a trustee's abandonment of a claim operates to confer standing on a debtor *nunc pro tunc.* Ross, however, contends that these cases are inapplicable to the instant action. In support of his contention, Ross first argues that Bergeron lacked standing pursuant to *Management Investors v. United Mine Workers of America*, 610 F.2d 384, 392 (6th Cir. 1979). In *Management Investors*, the plaintiff did not disclose his cause of action against the defendant to the trustee of his bankruptcy estate prior to receiving his discharge. The Sixth Circuit found that although the cause of action was informally abandoned when the bankruptcy case was closed, because it was never formally abandoned by the trustee, the plaintiff lacked standing to pursue the claim. The Sixth Circuit noted:

> In some cases, a bankruptcy trustee chooses to formally abandon a claim. In such cases, the cause of action revests in the bankrupt, and he can then bring suit. In this case, however, [the plaintiff] never brought these claims to the trustee's attention. Thus it cannot be said that they revested in him because the trustee abandoned them.

610 F.2d at 392. Ross contends that based on the above quoted language, standing did not revest in Bergeron because neither Bergeron himself, nor anyone on Bergeron's behalf, disclosed Bergeron's claims against Ross to the Florida trustee. Ross argues that the Bankruptcy Court committed clear error in determining that Bergeron notified the Florida trustee of his claims.

While the record does indicate that the Florida trustee was notified of Bergeron's claims by Neal O'Toole, Esq. and Lilly, O'Toole & Brown, P.A. (collectively, "O'Toole"), rather than Bergeron himself, the court finds this is a distinction without a difference.[1]  Although Bergeron initially failed to list his claims against Ross in his Florida bankruptcy schedules, the Florida trustee became aware of such claims and chose to formally abandon them.  Ross reads *Management Investors* too narrowly in arguing that standing did not revest in Bergeron because Bergeron himself did not disclose his claims to the Florida trustee.  *Management Investors* contains no requirement as to who discloses the previously unlisted claim to the trustee.  Rather, it merely imposes a requirement that the trustee formally abandon the claim, a requirement that was met in the instant case.  *See Stein v. United Artists Corp.*, 691 F.2d 885, 891-92 (9th Cir 1982) (noting that in *Management Investors*, the Sixth Circuit "held that the doctrine of abandonment did not apply because the claims were unscheduled and the bankruptcy court had not authorized abandonment.  The Court held the proper procedure would have been a petition to the bankruptcy court to reopen the proceedings and determine whether the claims should be administered."); *Maloof v. BT Commercial Corp.*, No. 1:07CV1902, 2008 WL 650325, at *5 (N.D.Ohio March 5, 2008) (noting that the Sixth Circuit has held that "only if a trustee formally abandons a claim does that claim revest in the debtor, enabling the debtor to then bring suit.") (citing *DeMarco v. Ohio Decorative Prods.*, No. 92-2294, 1994 U.S.App. LEXIS 3848, at *16 (6th Cir. Feb. 25, 1994); *Management Investors*, 610 F.2d at 392).  Accordingly, this court does not find that *Management Investors* compels the conclusion that Bergeron lacked standing to pursue the adversary proceeding.

Ross next argues that the Florida trustee's abandonment of Bergeron's claims did not revest standing in Bergeron based on the principles of judicial estoppel.  Judicial estoppel is an equitable

---

[1] O'Toole was a creditor of Bergeron and was the party who filed the emergency motion to reopen Bergeron's Florida bankruptcy case for the limited purpose of authorizing the Florida trustee to abandon Bergeron's claims against Ross.

doctrine invoked by a court at its discretion under which a party who has assumed one position in a legal proceeding may be estopped from assuming an inconsistent position. *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). This court finds Ross's argument unavailing insomuch as the principles of judicial estoppel do not operate to affect a plaintiff's standing or a court's subject matter jurisdiction.[2]

Ross also argues that he raised the issue of Bergeron's standing prior to the Florida trustee's abandonment of Bergeron's claims against him, and therefore, the Bankruptcy Court should have dismissed the adversary proceeding for lack of jurisdiction prior to the abandonment. We disagree. The record does not indicate that Ross ever moved to dismiss the adversary proceeding based on Bergeron's standing or that Ross ever brought the issue of Bergeron's standing to the attention of the Bankruptcy Court before the Florida trustee filed the July 20, 2005 Notice of Abandonment.[3]

Therefore, this court does not find that the Bankruptcy Court erred in determining that although Bergeron lacked standing at the time he filed the adversary proceeding, he acquired standing *nunc pro tunc* by virtue of the Florida trustee's abandonment of his claims against Ross. Accordingly, the Bankruptcy Court properly exercised jurisdiction over the adversary proceeding.

---

[2] Moreover, we do not find that the Bankruptcy Court erred in denying Ross's March 20, 2007 motion to dismiss on the basis of judicial estoppel. The Bankruptcy Court noted that judicial estoppel "is an equitable doctrine, subject to equitable defenses, such as laches and waiver." *Bergeron v. Ross (In re Ross)*, 367 B.R. 577, 581 (Bankr.W.D.Ky. 2007). The Bankruptcy Court determined that because Ross waited until the day before the trial and at least 18 months after learning of the Florida bankruptcy situation to file the motion to dismiss, it should be denied as untimely. We agree with the reasoning and conclusion of the Bankruptcy Court.

[3] To the extent Ross attempts to challenge the abandonment that took place in Bergeron's Florida bankruptcy case, such a challenge is an impermissible collateral attack on the Florida bankruptcy court's order. *See Celotex Corporation v. Edwards*, 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995); *Pratt v. Ventas, Inc.*, 365 F.3d 514 (6th Cir. 2004). The Bankruptcy Court did not err in declining to entertain such a challenge.

II.

Ross next challenges the Bankruptcy Court's decision to deny his discharge pursuant to 11 U.S.C. § 727(a)(3).

Section 727(a)(3) provides for denial of a debtor's discharge when a debtor has:

> concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. 727(a)(3). This section "requires the debtor to provide creditors 'with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present.'" *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 882 (6th Cir. 1999) (quoting *In re Martin*, 141 B.R. 986, 995 (Bankr.N.D.Ill. 1992)). "The adequacy of debtor's records must be determined on a case by case basis... [and] [c]onsiderations to make this determination include debtor's occupation, financial structure, education, experience, sophistication and any other circumstances that should be considered in the interest of justice." *Id.* (quoting *United States v. Trogdon (In re Trogdon)*, 111 B.R. 655, 658 (Bankr.N.D.Ohio 1990)). A "sophisticated debtor is generally held to a higher level of accountability in record keeping, and the more complex the debtor's financial situation, the more numerous and detailed the debtor's financial records should be." *McCord v. Sethi (In re Sethi)*, 250 B.R. 831, 839 (Bankr.E.D.N.Y. 2000).

"The party seeking denial of a discharge has the burden of proving the inadequacy of the debtor's records." *Strbac*, 235 B.R. at 882 (quoting *Wazeter v. Michigan Nat'l Bank (In re Wazeter),* 209 B.R. 222, 227 (W.D.Mich. 1997) (citations omitted)). "However, once a debtor's records are determined to be inadequate, the burden is on the debtor to establish any justification therefor." *Id.* (citing *Trogdon*, 111 B.R. at 658). Explanations given by a debtor to explain any deficiency in his records must be

evaluated for credibility and reasonableness under the circumstances. *Grange Mut. Ins. Co. v. Benningfield (In re Benningfield)*, 109 B.R. 291, 293 (Bankr.S.D.Ohio 1989).

The Bankruptcy Court determined that because Ross owned and operated various real estate enterprises in the years immediately preceding the filing of his bankruptcy, he was a sophisticated person. The Bankruptcy Court held that, as a sophisticated person, Ross should be able to adequately produce financial documents for the period of time between December 2000 and March 2004 explaining his financial transactions and showing the disposition of large sums of money acquired during that period of time. The Bankruptcy Court found that Ross's records were inadequate and that his explanation for his failure to maintain adequate records, a preference to operate on an all cash basis, was insufficient to justify such failure.

On appeal, Ross does not attempt to demonstrate that his record keeping was adequate. Rather Ross notes that his "only documentary shortcoming was that he could not fully account through records for all of the money he spent traveling, paying living expenses, paying lawyers and building a house." Appellant's Brief p. 9. Accordingly, this court cannot conclude that the Bankruptcy Court erred in determining that Ross failed to keep adequate records from which his financial condition or business transactions might be ascertained. Additionally, Ross has failed to provide this court with any additional justification explaining his lack of records beyond his preference to operate on an all cash basis. Although Ross may prefer to operate without financial records, he holds an implied statutory affirmative duty to keep and preserve records. *See Strzesynski v. Devaul (In re Devaul)*, 318 B.R. 824, 830 (Bankr.N.D.Ohio 2004) (§ 727(a)(3) "implicitly casts an affirmative duty on debtors not to destroy and to keep and preserve records). Therefore, this court cannot conclude that the Bankruptcy Court erred in determining that Ross's explanation was insufficient to explain his lack of records. Accordingly, this court cannot conclude that the Bankruptcy Court's denial of Ross's discharge pursuant to 11 U.S.C. § 727(a)(3) was clearly erroneous.

For the above stated reasons, and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the decision of the Bankruptcy Court is **AFFIRMED**.

**IT IS SO ORDERED** this